FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 22 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

SOLOMON ARTIS,

      Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-1 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 16, 2018, Solomon Artis pleaded guilty to Count One of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Solomon Artis is hereby sentenced to 121 months of incarceration, 3 years of supervised release, no fine, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a 75-count Superseding Indictment against 23 defendants, including Solomon Artis ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 16, 2018, Defendant pled guilty to Count One of the Superseding Indictment, charging Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d), and admitted as racketeering acts his participation in: (1) conspiring to distribute cocaine base, as alleged in Racketeering Act 2; and (2) conspiring to murder John Doe #5 and John Doe #6, as alleged in Racketeering Act 66. *See* Plea Agreement ¶ 1, ECF No. 536.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I. Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now 29 years old, was born on August 4, 1989 in the Bronx, New York. Presentence Investigation Report ("PSR") ¶ 95, ECF No. 709. Defendant is the sole child born to the consensual union of Damon Artis and Joanna Perez. *Id.* Defendant's parents separated due to irreconcilable differences when Defendant was an infant. *Id.* Defendant's father currently resides in the Bronx and works as a heating, ventilation, and air conditioning technician. *Id.* Defendant's mother resides at the address of record in Brooklyn, New York and works at a

2

Rainbow Shops clothing store. *Id.* Both parents are aware of Defendant's arrest and conviction and remain supportive. *Id.*

Defendant has four maternal half-siblings and three paternal half-siblings, all but one of whom are younger than Defendant. *Id.* ¶ 98. All of Defendant's half-siblings are aware of his arrest and conviction and remain supportive. *Id.*; *see also* Def. Sentencing Mem. ("Def. Mem.") at 3-4, ECF No. 772.

Defendant advised he was raised in a lower-income household and lived between his parents' homes throughout his childhood. PSR ¶¶ 99-100. He lived primarily with his mother and would see his father every weekend until the age of 5. *Id.* ¶ 99. When Defendant was 5 years old, he moved in with his father because his mother lost her residence and lived in a shelter. *Id.* Defendant's father was then arrested, and Defendant returned to living with his mother, who by that time had secured the Brooklyn residence where she continues to live today. *Id.* Defendant's father was incarcerated for approximately 5 years, and Defendant maintained contact with him by telephone. *Id.*

Defendant resided with his mother in Brooklyn until the time of his arrest for the instant offense. *Id.* ¶ 103. After Defendant's arrest, Defendant's family moved to a different apartment within the same building—the current address of record. *Id.* Although Defendant was initially incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, Defendant is currently incarcerated at the Metropolitan Correctional Center ("MCC") in New York, New York. *Id.* ¶ 104. According to the Bureau of Prisons SENTRY database, in 2016, Defendant incurred two disciplinary infractions while living at the MDC and MCC: (1) refusing to obey an order; and (2) refusing to obey an order and being insolent to a staff member. *Id.*; *see also* Def. Mem. at 5.

Defendant has participated in numerous educational courses while incarcerated, including: Focus Forward Public Defenders; Independent Study Dinosaur Hunter; Independent Study Rome 1; Independent Study Rome 2; Independent Study Rome 3; Independent Study Rome 4; Independent Study Atlantis Lost City; Independent Study American Revolution; and Independent Study African Wildlife. *Id.* Defendant has also obtained certificates of completion with respect to Lead by Example & Reverse the Trend (dated December 9, 2017) and the Focus Forward Project (dated September 2018). *Id.*

Defendant is physically and mentally healthy. *Id.* ¶¶ 106-07. He has a sickle cell anemia trait but does not display any symptoms of the disease. *Id.* ¶ 106. Defendant also suffered from asthma as a child. *Id.* Defendant self-described as mentally stable, and he has not sought mental health treatment. *Id.* ¶ 107.

Defendant has a history of substance abuse issues. *Id.* ¶¶ 108-11. He admitted he had a problem with marijuana prior to his arrest. *Id.* ¶ 109. He advised he first smoked marijuana at age 16 and was smoking marijuana three times per day. *Id.* He last smoked marijuana prior to his instant arrest, and he reported he now feels good and has a clear mind. *Id.* During his incarceration at the MCC, Defendant completed the six-month Non-Residential Drug Abuse Program. *Id.* Defendant does not have a problem with alcohol and denied using any additional illicit substances. *Id.* ¶¶ 108, 110.

Defendant attended the tenth and eleventh grades at Taft High School in the Bronx. *Id.* ¶ 113. Defendant explained his father took him out of high school out of concern Defendant would be arrested by local police and because he was cutting classes and associating with the wrong people. *Id.* Defendant thereafter attended Delaware Valley Job Corps in Callicoon, New York from 2008 to 2009. *Id.* ¶¶ 112-13. He was awarded a GED on April 5, 2008. *Id.* ¶ 112.

Verification Records from the Job Corps program indicate Defendant was terminated from the program due to "disciplinary separation." *Id.* ¶ 118.

Defendant has held several jobs since 2006. *Id.* ¶¶ 117-18. In 2006, Defendant delivered packages for Estee Lauder in New York City. *Id.* ¶ 118. From 2010 to 2011, Defendant was employed as a home health aide at Partners in Care Nursing Home in New York City. *Id.* From 2011 to the time of the instant arrest in 2015, Defendant was intermittently employed off the books by an unrecalled construction contractor in Brooklyn. *Id.* ¶ 117. For approximately one month prior to Defendant's instant arrest, he was employed as a kitchen helper at Milk River Restaurant in Brooklyn. *Id.*

Defendant was a member of the Outlaw Gangsta Crips ("OGC"). *Id.* ¶¶ 12, 42. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking, and promoting prostitution, and they have committed acts of violence, including murder, attempted murder, robbery, assault, and other crimes. *Id.* ¶ 11. The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in its victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 10.

With respect to Racketeering Act 2, members of the OGC sold cocaine base in New York, Connecticut, and West Virginia and shared drug suppliers, drug turf, and customers. *See id.* ¶¶ 16-23. For his part, Defendant conspired with a number of co-defendants to distribute cocaine base between August 9, 2013 and May 12, 2015. *Id.* ¶¶ 16-17, 44.

With respect to Racketeering Act 66, Defendant conspired with co-defendants Leonard Barletto, Parris Desuze, Courtney Coy, and Andre Holman to murder John Doe #5 and John Doe

#6 on May 12, 2015. *Id.* ¶¶ 37-39. The conspiracy was thwarted only because law enforcement officials intercepted telephone calls pursuant to a judicially authorized wiretap among Defendant, Desuze, Barletto, and Coy and arrested them before they could carry out the murders. *Id.* ¶¶ 37, 39. The defendants believed John Doe #5, John Doe #6, and a third individual—all of whom were affiliated with the gang Bosses in Business—were responsible for the murder of an OGC member named Kareem Mitchell. *Id.* ¶ 38.

Defendant called Desuze and reported John Doe #5 and John Doe #6 were in the East Flatbush section of Brooklyn. *Id.* ¶ 39. After a series of intercepted phone calls among Coy, Barletto, and Desuze about the locations of the two men, during which the callers confirmed they had guns, law enforcement officers observed Barletto, Coy, and Holman together in a car parked on the block they expected to find the victims. *Id.* After Barletto, Coy, and Holman stepped out of the car and stood around the corner, they were arrested. *Id.* Defendant was arrested one block away in his home. *Id.* On May 13, 2015, pursuant to a valid search warrant, law enforcement officials searched the car in which Barletto, Coy, and Holman sat and found three firearms and a quantity of cocaine base. *Id.* ¶ 40. The firearms were located near where Holman, Barletto, and Coy had been sitting. *Id.*

The Government has advised it is able to prove by a preponderance of the evidence several racketeering acts, both charged and uncharged, for which Defendant was not convicted. *Id.* ¶¶ 3-4. Probation agues this Court must consider such conduct for guideline purposes pursuant to *United States v. Ruggiero*, 100 F.3d 284 (2d Cir. 1996). *Id.* ¶¶ 46-47. First, the Government avers it can prove Defendant partook in a state law robbery conspiracy and a federal robbery conspiracy, as charged in Racketeering Acts 57A and 57B of the Superseding Indictment. *Id.* ¶¶ 3, 24-25, 46. Specifically, the Government advises Defendant and others

conspired to rob a check-cashing business located at 1446 Nostrand Avenue. *Id.* ¶¶ 24, 46. They planned to enter a vacant apartment above the business and cut a hole in the floor of that apartment. *Id.* One of Defendant's co-conspirators, Reavon Brown—who pled guilty in a separate case in this district to this crime, *see* 15-cr-551 (ENV)—was to enter the store through the hole and rob the store at gunpoint. *Id.* ¶ 24. The conspirators entered the vacant apartment and cut the hole, but the plan was thwarted when an employee noticed the hole and called the police. *Id.* ¶¶ 24, 46. Defendant was not convicted of this act.

Second, the Government reports it also can prove the uncharged racketeering act of Firearms Trafficking. *Id.* ¶¶ 4, 47. Specifically, the Government advises on December 4, 2014, Defendant sold a .40 caliber Smith & Wesson handgun to a confidential informant who had purchased cocaine base from Artis and other OGC members. *Id.* ¶ 47. Law enforcement officials recorded the sale using a concealed audio and video recording device they provided to the informant. *Id.* They also traced the weapon to a gun-store burglary that occurred in Baltimore, Maryland on or about February 24, 2014. *Id.* Defendant was neither charged with nor convicted of this act. Probation notes, however, that this offense is accounted for as a specific offense characteristic within the Cocaine Drug Conspiracy, for which Defendant receives a two-level enhancement, as reflected in the Plea Agreement. *Id.*; *see also* Plea Agreement ¶ 2. Other than the instant offense, Defendant does not have any arrests or convictions.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

As part of the instant offense, Defendant partook in a conspiracy to kill two individuals in support of a violent and dangerous gang. Any violence that would have transpired would undoubtedly have endangered the community at large. These murders would have been carried out but for the Government's discovery of the conspiracy pursuant to a judicially authorized wiretap. In addition, Defendant's sale of illicit narcotics both provided dangerous and illegal drugs to his community and also helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter this Defendant from further criminal activity and encourages him to sever his ties to the OGC. It also seeks to protect the public from Defendant's conduct in the future. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Superseding Indictment, which charged Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Plea Agreement ¶ 1. In connection with that conspiracy, Defendant admitted as racketeering acts his participation in: (1) conspiring to distribute cocaine base, as alleged in Racketeering Act 2; and (2) conspiring to murder John Doe #5 and John Doe #6, as alleged in Racketeering Act 66. *Id.*

Per 18 U.S.C. § 1963(a), Defendant faces a maximum term of imprisonment of 20 years. *See* 18 U.S.C. § 1963(a) ("Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment . . . ."). The parties all agree Defendant's offense constitutes a Class C felony for which the applicable statutory maximum is 20 years. *See* PSR ¶ 125; Def.'s Mar. 1, 2019 Letter, ECF No. 699; Gov't's Mar. 4, 2019 Letter, ECF No. 701. Defendant also faces a maximum term of supervised release of three years, *id.* § 3583(b)(2); a maximum fine of $250,000.00, *id.* § 3571(b); mandatory restitution in the full amount of each victim's losses as determined by the Court, *see id.* §§ 3663A, 3664; a special assessment of $100.00, *id.* § 3013; and forfeiture as set forth in the Plea Agreement. Defendant is statutorily eligible for between one and five years probation. *Id.* § 3561(c)(1).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The parties dispute the offense level applicable to Defendant. Probation argues the adjusted offense level applicable to Defendant is 32. According to Probation, the appropriate Guideline for this 18 U.S.C. § 1962(d) offense is United States Sentencing Guideline ("USSG") § 2E1.1(a)(2), which applies to unlawful conduct relating to racketeer influenced and corrupt organizations and instructs the Court to apply the base offense level applicable to the underlying racketeering activity. PSR ¶ 55. With respect to Racketeering Act 2, Probation applies USSG §

9

2D1.1(c)(4), which pertains to offenses involving at least 840 grams but less than 2.8 kilograms of cocaine base and provides a base offense level of 32. *Id.* Probation then adds an additional 2 levels pursuant to USSG § 2D1.1(b)(1) because the instant offense involved the possession of firearms, resulting in an adjusted offense level of 34. *Id.* ¶ 56; *see also id.* ¶ 47. With respect to Racketeering Acts 66A and 66B, Probation applies USSG § 2A1.5, which pertains to conspiracy to commit murder and supplies a base offense level of 33 as to each count. *Id.* ¶¶ 61-72.

Probation then adds 3 points to the highest adjusted offense level for a multiple count adjustment pursuant to USSG §§ 3D1.4(a) through 3D1.4(c), assigning one unit to each of Racketeering Acts 2, 66A, and 66B and no units to Racketeering Acts 57A and 57B. *Id.* ¶¶ 79-82.[1] This renders a combined offense level of 37. *Id.* ¶ 82. Probation also believes a two-point reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a), a one-point reduction for Defendant timely notifying the Government of his intention to plead guilty pursuant to USSG § 3E1.1(b), and a two-point reduction for global resolution pursuant to USSG § 5K2.0 are warranted, providing a total adjusted offense level of 32. *Id.* ¶¶ 84-85, 141; Probation Sentence Recommendation at 2, ECF No. 709-1.

Defendant and the Government argue this Court should implement the Guidelines calculation provided in the Plea Agreement, which yields a total offense level of 31. Def. Mem. at 3 n.3, 6; Gov't Sentencing Mem. ("Gov't Mem.") at 2-3, ECF No. 779. As the Government reports, the higher offense level in the PSR is "attributable to a multiple-count adjustment that

---

[1] Probation also considers Racketeering Acts 57A and 57B as part of its Guidelines-level calculation, noting the Court must consider relevant conduct the Government can prove by a preponderance of the evidence pursuant to *United States v. Ruggiero*, 100 F.3d 284. *See* PSR ¶¶ 46-47, 73-78. Because the base offense level for these acts is 20 pursuant to USSG § 2B3.1 and therefore more than 9 levels less serious than the group with the highest offense level, Probation maintains these offenses do not result in a higher offense level under USSG § 3D1.4(a). *Id.* ¶¶ 79-82.

10

adds two units, rather than one, for Racketeering Act 66, because it was alleged as a sub-predicated conspiracy to murder two victims." Gov't Mem. at 3; *see also* PSR ¶¶ 79-82. On adjusting for multiple counts, the Plea Agreement does not divide Racketeering Act 66A and 66B; rather, it assigns one unit to each of Racketeering Acts 2 and 66, providing for an increase of two offense levels pursuant to USSG §§ 3D1.4(a) through 3D 1.4(c). Plea Agreement ¶ 2. The Government adds: "Because the plea agreement did not contemplate ascribing two units to that racketeering act, the government respectfully submits that the range set forth in the plea agreement should be applied." Gov't Mem. at 3.[2] According to Defendant and the Government, Defendant's adjusted offense level should therefore be 36. Defense counsel and the Government also agree Defendant should receive a two-point reduction for acceptance of responsibility, a one-point reduction for timely notifying the Government of his intention to plead guilty, and a two-point reduction for global resolution, yielding a total offense level of 31. *See* Plea Agreement ¶ 2; Gov't Mem. at 2-3; Def. Mem. at 6.

Accounting for the global resolution reduction, Probation argues a Level 32, Criminal History Category I sentence of 121 months is appropriate in this case. Probation Sentence Recommendation at 1-2. Defendant requests "a non-guideline sentence or at the very least a sentence at the bottom of the applicable guideline range." Def. Mem. at 9. The Government "asks the Court to impose a term of imprisonment within the advisory Guidelines range of 108 to 135 months." Gov't Mem. at 1.

---

[2] The calculation in the Plea Agreement also does not account for Racketeering Acts 57A and 57B, of which Defendant was not convicted. *See* Plea Agreement. As explained above, consideration of these offenses would not and does not have a material effect on Defendant's Guidelines range, as the offenses do not result in a higher offense level under USSG § 3D1.4(a). *See supra* note 3; *see also* PSR ¶¶ 79-82.

11

Defendant has no prior criminal convictions, establishing a criminal history category of I. PSR ¶ 87-90. With Probation's calculation of an Offense Level of 32 and Criminal History Category of I, the Guidelines recommend a term of incarceration of between 121 and 151 months. Under the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, USSG § 5D1.2(a)(2) and a fine of between $17,500.00 and $175,000.00, *id.* §§ 5E1.2(c)(3), (h)(1).

With the Government's and Defendant's calculation of an Offense Level of 31 and Criminal History Category of I, the Guidelines recommend a term of incarceration of between 108 and 135 months. Under the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, *id.* § 5D1.2(a)(2) and a fine of between $15,000.00 and $150,000.00, *id.* §§ 5E1.2(c)(3), (h)(1).

Under either calculation, the Guidelines further suggest Defendant is ineligible for probation because the applicable guideline range is in Zone D of the sentencing table. *Id.* § 5B1.1, n.2. Additionally, Probation notes there is no evidence Defendant has the ability to pay a fine. PSR ¶ 100.

The Court finds the appropriate total offense level is 31, which with a Criminal History Category I, yields a guidelines imprisonment range of 108 to 135 months of incarceration.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is applicable in Defendant's case, *see id.* § 3663. Since the instant offense occurred after April 24, 1996, restitution is mandatory pursuant to 18 U.S.C. § 3663A and Guideline § 5E1.1(a)(1). The Government has yet to provide victim impact statements. As a result, the specific amounts owed to the individual victims are unknown, and restitution cannot be determined with accuracy. PSR ¶ 136. This Court reserves its right to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims. *See* 18 U.S.C. § 3664(d)(5).

### CONCLUSION

A sentence of 121 months of incarceration to run concurrently with the undischarged state terms of imprisonment, 3 years of supervised release (with special conditions), no fine, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 22, 2019
      Brooklyn, New York